JOHN L. DRAPER *vs.* JOHN SAXTON.

Hampshire. September 21. — 30, 1875. AMES & DEVENS, JJ., absent.

A mortgage and note on demand were given to secure A. for his liability on certain notes of the mortgagor which A. had indorsed, and to cover future liabilities which A. might assume for the mortgagor. The note and mortgage were assigned to the plaintiff, but prior thereto, and after the notes indorsed by A. were due, he took them up by a note signed by himself and the defendant. *Held,* that this was a payment of the original notes, and that the assignment was not affected by the Gen. Sts. c. 161, § 64. making it criminal to assign collateral security before the debt secured thereby is due.

Under the Gen. Sts. *c.* 161, § 64, declaring the assignment of collateral security. before the debt secured thereby is due, a criminal offence, the title of an innocent assignee who takes such security for value and without notice is not affected by the fraud of the assignor.

Questions, upon which no ruling was asked or exception taken at the trial, are not open upon a bill of exceptions.

In an action for the conversion of tobacco raised in 1872, a witness, who testified as an expert that in September, 1874, when demand was made, there was a market value to the crop of 1872 tobacco grown in the vicinity, so that he could tell the value of a lot of that tobacco without seeing it or knowing more of it than it was of that crop, was permitted to testify, against the defendant's objection, that the value was from eight to twelve cents per pound, and on cross-examination testified, among other things, that he could not tell the value of any particular crop raised that year, save by inspection, sample or description, and that lots of tobacco raised that year differed very much, and no two were alike. *Held,* that the evidence was rightly admitted.

TORT for the conversion of a quantity of tobacco. Trial in the Superior Court, before *Allen,* J., without a jury, who allowed a bill of exceptions in substance as follows :

The tobacco was grown by James H. Saxton in 1872, and on November 24, 1873, he conveyed it by a mortgage, recorded the same day, together with other articles, the produce of his farm in 1873, to John H. Stebbins, to secure his note of $2000 dated September 21, 1872, payable to Stebbins or order, on demand. Stebbins assigned the mortgage to the plaintiff, by an instrument bearing date December 10, 1873, recorded on April 20, 1874, and also indorsed the note to him. The plaintiff proved a notice for foreclosure of said mortgage, given by him to James H. Saxton on June 18, 1874, and duly recorded ; and a demand on said James H. of the tobacco ; and a refusal by him, in September, 1874.

The defendant offered evidence tending to prove that the $2000 note was given to secure Stebbins against his liabilities for James H. Saxton ; that when the note was given he was liable for about $1000 on notes which he had signed or indorsed for the accommodation of said James H., and the note was made for $2000 to cover future liabilities, and was secured, when given, by the mortgage of the tobacco in question ; that there was no other consideration for the note or mortgage ; that when the latter mortgage was given, Stebbins was liable for said James H. on two notes, one for about $500 and the other for about $700, to which James H. and the defendant were parties ; that on December 1, 1873,

after the giving of the mortgage and before the assignment of it to the plaintiff, these notes, being overdue, were taken up, in part by said James H., and in part by a note to the Crocker Bank for $900, signed by Stebbins and the defendant; that one half of that note was paid by Stebbins on March 3, 1874, and the other half by the defendant, and that Stebbins made no other payments on account of his said liabilities for James H.; that when the defendant became liable with Stebbins for James H., Stebbins promised to give him security on the mortgaged tobacco, and that after March 1, 1874, he agreed to sell it, or let the defendant sell it to apply on the payment made by the defendant on the $900 note; that the mortgaged property remained in the possession of the mortgagor, and he fed out or sold a part of it, being the produce of 1873; that about April 10, 1874, he put the tobacco into the possession of the defendant to secure him for what he had paid as aforesaid, and it was so in his possession when the plaintiff's demand was made. The defendant claimed to hold the tobacco as security for what he had paid on said note to the Crocker Bank.

It appeared that the assignment to the plaintiff was to secure a note for $500, given by Stebbins to the plaintiff of the same date with the assignment, the consideration of which was money lent by the plaintiff to Stebbins, and that the note had not been paid by Stebbins.

There was no evidence of the time when the assignment was made to the plaintiff other than what appeared on the papers. There was no evidence that the plaintiff had notice that the $2000 note was held by Stebbins as collateral; and no evidence that either the defendant or the mortgagor had notice of the assignment to the plaintiff until after the tobacco had been put into the defendant's possession.

The defendant contended, on the foregoing evidence, that the mortgage was void as an assignment of property held as collateral security, before the debt was due, and asked the judge to rule that, if the facts which the evidence tended to prove were found to be proved, and if the assignment was made before Stebbins had paid any money on his liability secured by the note and mortgage, or made any payment other than signing the note of December 1, 1874, as aforesaid, and after he had verbally agreed

to give to the defendant security upon the mortgaged tobacco, and if the defendant got possession of the tobacco to hold as such security, before the assignment was recorded, and before he had notice of it, the mortgage would be void as to him. But the judge declined so to rule, and gave judgment for the plaintiff, for the sum of $473, being the value of the tobacco, and less than the amount due to Stebbins on account of the payment which he had made to the Crocker Bank.

To prove the value of the tobacco, the plaintiff called one Tucker, an expert, who testified that there was a market value, in September, 1874, to the crop of 1872 tobacco grown in this vicinity, so that he could tell the value of a lot of that tobacco without seeing it, or knowing more of it than that it was of that crop. He was then asked what was the value of such tobacco. The defendant objected, but the judge admitted the evidence. The witness answered that the value was from eight to twelve cents a pound. On cross-examination the witness testified, among other things, that he could not tell the value of any particular crop raised that year, save by inspection, sample or description; that lots of tobacco raised that year differed very much, and no two were alike. No further ruling was asked as to the admissibility of said evidence.

To the admission of this evidence, and to the said rulings and refusal to rule, the defendant alleged exceptions.

*S. T. Field*, for the defendant.

*D. W. Bond*, for the plaintiff.

ENDICOTT, J. The court properly refused to rule that the mortgage was void, as an assignment of collateral security before the debt was due.

The mortgage and the note, which was on demand, were given to secure Stebbins for his liability on certain notes of the mortgagor, which Stebbins had indorsed, and to cover future liabilities which Stebbins might assume for the mortgagor. Before the assignment of the note and mortgage to the plaintiff, and after the notes upon which Stebbins was indorser were due, he took them up by a note signed by himself and the defendant. This operated as a payment of the original notes, the relations of the parties were changed, the liability of the mortgagor was discharged except to Stebbins and the defendant, and Stebbins could have foreclosed his mortgage. *Washburn* v. *Pond*, 2 Allen, 474.

The assignment of the note and mortgage to the plaintiff by Stebbins was therefore not within the provisions of the Gen. Sts. c. 161, § 64, making it criminal for the holder of collateral security to assign it before the debt it was intended to secure became due and payable. Even where security is assigned in violation of this statute provision, the title of an innocent assignee, who takes for value and without notice, is not affected by the fraud of the assignor; and this case finds that the plaintiff had no knowledge that the note and mortgage were held by Stebbins as collateral. See *Gardner* v. *Gager*, 1 Allen, 502. The sum for which judgment was rendered was less than the amount due Stebbins on account of his payment, so no question arises whether more than that amount could be recovered.

No ruling was asked or exception taken at the trial in regard to the notice of foreclosure, the record of the assignment, or the delivery of the mortgaged property, and those questions are not open on this bill of exceptions.

The witness Tucker was properly allowed to testify to the value of the tobacco crop of 1872 in that vicinity. The objection is not made to the witness, on the ground of his want of knowledge or experience, but to the competency of the evidence itself. Such evidence is competent for the purpose of ascertaining the market value of a certain class or kind of property, and may assist in determining the value of an article belonging to that class, although the value of the particular article may vary according to its condition and quality. The competency of this evidence is fully considered and the cases cited in *Miller* v. *Smith*, 112 Mass. 470. *Exceptions overruled.*