LEONARD K. SCROGGIN V. HARRIET R. JOHNSTON ET AL.

FILED SEPTEMBER 17, 1895.     No. 5705.

1. **Pleading**: AMENDMENTS. The allowing of a petition to be amended so as to change the form of the action is permissible where the identity of the cause of action is preserved.

2. ———: ———: EJECTMENT: CONTRACTS. Plaintiff brought an action in ejectment, and the defendant pleaded a contract entered into by plaintiff for the sale of the premises and demanded affirmative equitable relief. The plaintiff was permitted to file an amended pleading, changing the form of the action from ejectment to that of foreclosure of the contract. *Held*, Not reversible error.

3. ———: ———. In a proper case the court may permit a pleading to be amended to conform to the proof.

4. **Rulings on Evidence**: REVIEW: ASSIGNMENTS OF ERROR. This court will not review the rulings of the trial court on the admission of testimony unless the particular rulings are pointed out in the petition in error.

5. **Trial to Court**: ADMISSION OF INCOMPETENT TESTIMONY: REVIEW. In a cause tried without a jury the admission of incompetent or irrelevant testimony is not reversible error.

6. **Conflicting Evidence**: REVIEW. The finding of the trial court, based on sufficient evidence, will not be disturbed on appeal, unless manifestly wrong.

7. **Estoppel**: PLEADING : MAXIMS. The facts constituting an estoppel *in pais* must be pleaded.

ERROR from the district court of Nuckolls county. Tried below before MORRIS, J.

*T. T. Beach* and *S. A. Searle,* for plaintiff in error.

*S. W. Christy, contra.*

NORVAL, C. J.

An action of ejectment for the southeast quarter of the northwest quarter and the north half of the southwest quarter of section 33, town 3, range 6 west, in Nuckolls county, was instituted in the court below by Harriet B. Johnston against Charles H. Malsbury. Upon a trial to the court, without answer, judgment was rendered for the plaintiff, and upon the same day, at the request of the defendant, the judgment was set aside, and the statutory second trial was granted. Defendant was also given leave to answer, and, by consent of parties, L. K. Scroggin was made a party defendant. The petition states that the plaintiff has the legal estate in the premises described and is entitled to possession of them; that the defendant unlawfully withholds possession and has received the rents and profits of said lands and applied the same to his own use, amounting to the sum of $600. The answer of Scroggin contains a general denial, after which it sets up that the plaintiff, formerly Harriet R. Spurck, on the 1st day of February, 1884, entered into a contract in writing whereby she agreed to convey said premises to Malsbury upon his paying the sum of $2,000, as follows: $500 cash, and the remaining $1,500 in five equal payments of $300 each, commencing on February 1, 1889, with ten per cent interest from date of contract, the said $300 payments being evidenced alone by said contract and for which no promissory notes were given; that Malsbury executed and delivered to plaintiff his two promissory notes of $250 each in settlement of the $500 cash payment; that said contract,

or article of agreement, was duly acknowledged and recorded; that plaintiff on July 12, 1884, sold and assigned to J. W. Kline all her right, title, and interest in and to said contract and moneys described therein, and indorsed and delivered to said Kline the said two promissory notes; that subsequently said Kline, his wife joining with him, sold, assigned, and transferred said contract and moneys therein promised to the defendant L. K. Scroggin, and said Kline indorsed and transferred said two notes to said Scroggin, to whom defendant Malsbury has since paid said notes with the accrued interest thereon, as well as the interest on the five $300 payments; and that Malsbury has made no other or further payments thereon, for the reason plaintiff has notified him not to do so. The answer closes with a prayer that the court find the amount due Scroggin on said contract, together with the amount to become due thereon, and decree the same shall be paid to him, and upon such payments being made the court direct said plaintiff to convey the premises to Malsbury, or if the court shall find the plaintiff has no interest in the premises, that he be required to convey the same to Scroggin, and that plaintiff be enjoined from further prosecuting the suit, and for general relief. Malsbury's answer was substantially the same as the one filed by Scroggin, with the exception that it contained the further averments to the effect that he has complied with all the terms of the contract up to the time of receiving notice from plaintiff not to pay any moneys upon the contract to either Kline or Scroggin, and that Malsbury is now, and always has been, ready to perform each and all the stipulations of said contract by him to be performed, and is now ready and willing to make payment in full of all moneys due and to become due under the contract. This defendant prayed the court to determine who has the right to the money and to whom it shall be paid; that upon making payment to such party as the court shall direct plaintiff be required to

convey the premises to said answering defendant according
to the terms of said contract; that plaintiff be restrained
from further prosecuting this suit, and that this defendant
receive such other and further relief as justice and equity
demanded.   For reply to the answers plaintiff denies each
averment therein contained not expressly admitted ; ad-
mits the execution of the contract between herself and
Malsbury, set forth in the answer ; denies that she assigned
or sold the contract to Kline or any one else; denies that
Scroggin is entitled to receive the money on said contract of
purchase or that he is entitled to a deed to said premises or
any part thereof; avers that the assignment from Kline and
wife to Scroggin was made during the pendency of the
suit, and that Malsbury has failed to make the payments
and perform the covenants and conditions of said contract
on his part, whereby said contract is forfeited.   Subse-
quently, by leave of court, Malsbury, by an amendment
to his answer, admits he is in possession of the lands, but
says he entered in possession under the contract of purchase
dated February 1, 1884; avers that in good faith he has
paid to Scroggin on said contract, believing him to be the
owner thereof, the following sums: $450 about February
1, 1885, and $425 about February 1, 1886; that on or
about April 4, 1888, he executed and delivered to Scroggin
a note for $411.44, secured by a chattel mortgage, of which
amount $228.75 was to be applied in payment of interest
on said contract of purchase ; that defendant has made
lasting and valuable improvements upon the land of the
value of $600.   He prays the court to determine who is
entitled to the purchase money, and for judgment against
Scroggin for the several sums he paid him, with interest,
in case the court decrees the plaintiff is the owner of the
contract and entitled to receive the moneys therein called
for.   Upon the issues thus formed by the several pleadings
the cause was tried to the court, and at the close of the
trial plaintiff was permitted, over objection of counsel for

plaintiff in error, to file an amended or supplemental peti-
tion to conform to the proofs, in which it is alleged, in sub-
stance, that Malsbury was in possession of the premises
under the contract of purchase already mentioned, which
instrument it is alleged was afterwards taken from plaint-
iff's possession without her knowledge or consent and
without her receiving any value therefor from any person
whomsoever; that through some source to her unknown,
except by the testimony adduced on the trial, Scroggin ob-
tained possession of said contract, and has collected the
sums due thereon from Malsbury up to February 2, 1887,
without the knowledge or consent of plaintiff.   The prayer
is that an account be taken of the amount due plaintiff on
said contract from Malsbury, and that a decree be rendered
for a sale of the premises to satisfy said sum, unless the
same is paid by a day fixed by the court, and for general
equitable relief.   The court below found that plaintiff
never delivered the assignment of said contract to Kline,
nor authorized any one else to do so for her, but that the
same was by her then husband wrongfully and fraudu-
lently abstracted from plaintiff's possession, and by him
delivered to Kline to pay a part of her husband's indebted-
ness to Scroggin and for the payment of which said Kline
was surety; that Malsbury has not paid to plaintiff any
portion of the purchase money for the lands covered by
said contract of sale, but has paid to Scroggin the sum of
$1,104.19; that there is due from Malsbury to plaintiff on
said contract $3,583.26 for principal and interest, and that
there is due Malsbury from Scroggin for moneys paid him
on account of said contract the said sum of $1,104.19.   A
decree of foreclosure and sale of the premises was entered
in favor of the plaintiff, the several assignments of the
contract were annulled, and judgment was entered upon
the finding in favor of Malsbury and against Scroggin for
$1,104.19, and execution was awarded therefor.   From
the findings and judgment Scroggin prosecutes a petition
in error.

The first argument is directed to the ruling of the trial court in permitting the plaintiff below, after the evidence had been all taken, to file an amended or supplemental petition, whereby the form of the action was changed from a suit at law to a purely equitable action. It is true the suit, as originally brought, was in ejectment to recover the possession of land, and that such an amendment of the proceedings was allowed as to change the form of the action to that of foreclosure of a land contract upon the same premises, yet a reversal ought not to be ordered in consequence thereof. This court has decided that the permitting of an amendment of a petition which changes the form of the action is of no consequence, so long as the identity of the cause of action remains. (*Roberts v. Swearingen*, 8 Neb., 363; *McKeighan v. Hopkins*, 19 Neb., 33; *Schuyler Nat. Bank v. Bollong*, 28 Neb., 684; *Homan v. Hellman*, 35 Neb., 414.) In the case last cited, which was an action to quiet title to real estate, the petition was amended to state a cause of action in ejectment to recover the same premises, and such amendment was held not to be erroneous. The case reported in 19 Neb. was a suit in ejectment, and the court permitted an amendment to make the action one to redeem. In *Robinson v. Willoughby*, 67 N. Car., 84, the plaintiff was permitted to amend his complaint, changing the form of the action from ejectment to that of foreclosure of a mortgage. In the case at bar it will be observed that a judgment was rendered in favor of the plaintiff for the recovery of the premises without any defense being interposed. Subsequently, on request of the defendant Malsbury, the statutory second trial was granted, when he answered, and Scroggin was permitted to intervene. The answers of both the defendants set up matters for equitable cognizance, and equitable relief was demanded. The cause was tried by all the parties upon the theory that the action was one for the equity side of the court. Scroggin, therefore, cannot now be heard to complain that the

form of the action was changed.  It was inaccurate for the plaintiff to designate his amended pleading as a " supplemental petition," since it pleaded no new facts accruing after the filing of his original petition, but contained merely a statement of the transactions constituting his cause of action arising before the bringing of the suit. Technically it was an amended petition, but the fact that it was not so styled and designated by proper indorsement is immaterial.  In a proper case the court may permit a pleading to be amended to conform to the facts proved. (*Keim v. Avery*, 7 Neb., 54; *Homan v. Steele*, 18 Neb., 652; *Brown v. Rogers*, 20 Neb., 547 ; *Ward v. Parlin*, 30 Neb., 376 ; *Whipple v. Fowler*, 41 Neb., 675.)  We fail to discover any abuse of discretion in permitting the amended pleading to be filed.

Complaint is made because of the alleged errors in the rulings of the trial court on the admission of testimony offered by the plaintiff.  We cannot reverse the judgment on that ground, even though the rulings were erroneous— First, because the points were not sufficiently presented by the petition in error.  No particular ruling is therein specified or called to our attention, the assignment being that the trial court permitted and received improper, immaterial, unimportant, and irrelevant testimony on behalf of the plaintiff.  Like assignments in a petition in error have been invariably held bad. (*Wiseman v. Ziegler*, 41 Neb., 887; *Wonderlick v. Walker*, 41 Neb., 806.)  In the next place the cause was tried to the court without the intervention of a jury, and the rule in such case is that error cannot be predicated in the reviewing court upon the erroneous admission of testimony. (*Ward v. Parlin*, 30 Neb., 376; *Whipple v. Fowler*, 41 Neb., 675, and cases there cited.)

Error is alleged in that the court below propounded questions to the plaintiff, on re-cross-examination, while a witness in her own behalf.  Our attention has been challenged

to but one interrogatory put by the court to the witness to which an objection was made by plaintiff in error "to the court taking the part of counsel in the case," and that is found on page 26 of the bill of exceptions.   The cross-examination of Mrs. Johnston was conducted by Mr. Beach, during which he asked her, "You paid no attention to what became of the Malsbury assignments and notes?" to which she made answer, "Yes; I put them away." Q. "Did you until 1887 pay any attention to it?" A. "No, sir." Then the court asked the witness this question, which is the one objected to: "You mean you paid no attention to the assignment that you had made, or the notes from the time you made them. Do you mean that?" The reply was: "I took the papers home and put them in the secretary with my other papers. That is the assignment and the notes. I took them home and put them with my other papers in the secretary." It is plain that the object and purpose of the court in propounding the interrogatory was to ascertain if the witness understood the question Mr. Beach had framed in regard to whether she paid any attention to what became of the Malsbury assignment and notes. There was absolutely no evidence of there being a Malsbury assignment, while there was testimony concerning an assignment made by the plaintiff of the contract with Malsbury. It was the duty and province of the court to see that the witness comprehended the questions asked, in order that they might be answered understandingly.

It is insisted that the findings, decree, and judgment are not supported by the evidence and are contrary to law. That Mrs. Johnston executed an assignment of the land contract to Kline there is no room for doubt, the main question of fact which the trial court was called upon to determine being whether or not there was a delivery of the Malsbury contract, the assignment thereof and the notes of the plaintiff to Kline. There is no claim that Mrs. Johnston personally delivered them, but the evidence in-

50

troduced by the defendant is to the effect that they were
delivered by her husband with her knowledge and consent,
while the plaintiff testified unequivocally that after she
executed the assignment she took it home and placed the
same, together with the notes and contract, in a drawer of
the secretary in which she usually kept her papers; that
she did nothing further with them, and did not see them
again until at the trial; that she received nothing for mak-
ing the assignment; that she was induced to execute the
assignment upon the statement made by her husband that
Mr. Kline would pay $2,000 for the contract and notes,
and that the papers were to be delivered to Mr. Kline upon
his paying the money, which was never done. The evi-
dence on behalf of Scroggin tends to contradict that intro-
duced by the plaintiff upon the question of the delivery of
the assignment, notes, and contract. The testimony was, in
the main, that of interested witnesses, who testified dia-
metrically opposite to each other. Scroggin's principal
witness was Mr. Johnston, the husband of the plaintiff,
although they have not lived together since 1885. Under
the statute of Nebraska and the construction placed thereon
by repeated decisions of this court, Mr. Johnston was dis-
qualified from testifying against his wife. (*Buckingham v.
Roar*, 45 Neb., 244.) Upon a careful perusal of the bill
of exceptions we are satisfied there is sufficient competent
evidence in the record to support the findings of the trial
court that plaintiff never delivered the contract, assign-
ment, and notes to Kline, and that their possession was ob-
tained without her knowledge or consent, although the pre-
ponderance of the evidence is on the other side of the scale.
We can but apply the rule that where the evidence is con-
flicting, the findings of the trial court based thereon will
not be disturbed upon appeal. There being no delivery of
the assignment, no title or interest in and to the contract
or the moneys therein mentioned passed to Kline, nor to
his assignee Scroggin. (*Steffian v. Milmo Nat. Bank*, 6 S.

Scroggin v. Johnston.

W. Rep. [Tex.], 823; *Moody v. Dryden*, 34 N. W. Rep. [Ia.], 210; *Patrick v. McCormick*, 10 Neb., 1; *Cotton v. Gregory*, 10 Neb., 125.)

Plaintiff in error argues that he is a *bona fide* holder of the notes for value before maturity, and is therefore entitled to protection. A sufficient reply to this is, no such issue was raised by his answer. He does not plead that he became the owner of the notes before due in the usual course of business without notice of Mrs. Johnston's rights, nor does he aver that he paid anything of value therefor. The five payments of $300 each described in the contract, as elsewhere stated, were not evidenced by notes of any kind. The contract was in no sense commercial paper, and therefore Scroggin is not entitled to the same protection as a *bona fide* holder of negotiable paper purchased before maturity.

It is finally insisted that Mrs. Johnston is estopped from claiming the amount due on the land contract by placing it, duly assigned, together with the notes, in the possession of her husband, or where he had access to them. Counsel for the plaintiff is quite right when he says this question is raised for the first time in this court in the brief filed herein, and therefore such defense is not availing. It will be observed, from the synopsis of Mr. Scroggin's answer, that he has pleaded no estoppel, which he should have done if he desired to invoke the principle of law, which has become axiomatic, that "where one of two innocent persons must suffer loss by the fraud or misconduct of a third, he who has enabled the third person to occasion the loss must be the person who shall suffer." There being no reversible error in the record, the judgment is

AFFIRMED.

RAGAN, C., not sitting.